## UNITED STATES v. TWO HUNDRED AND FIFTY-FOUR BOTTLES OF INTOXICATING LIQUOR.

(District Court, S. D. Texas, at Houston. May 4, 1922.)

No. 458.

1. **Intoxicating liquors** ⊕═247—**Unreported liquor not subject to forfeiture where manifested.**

Manifesting intoxicating liquor as "ship's stores," under Rev. St. § 2809 (Comp. St. § 5506), and their surrender to the customs officers did not render them subject to forfeiture under National Prohibition Act, tit. 2, §§ 3, 6, and 26, though they should have been reported under Rev. St. § 2774 (Comp. St. § 5470).

2. **Intoxicating liquors** ⊕═247—**Possession of intoxicating liquor on United States ship ground for forfeiture under Prohibition Act.**

Possession of intoxicating liquors on the high seas by captain of a vessel owned and operated for the account of the United States Shipping Board Emergency Fleet Corporation was illegal, and they were subject to forfeiture under the National Prohibition Act, tit. 2, §§ 3, 6, 26; the ship being a part of the territory of the United States.

Libel of information filed by the United States to seize two hundred and fifty-four bottles of intoxicating liquor. Libel sustained, and judgment for forfeiture and condemnation.

D. E. Simmons, U. S. Atty., of Houston, Tex.
W. E. Price, of Galveston, Tex., for claimant.

HUTCHESON, District Judge. This is a libel of information filed by the United States attorney on behalf of the government to forfeit 254 bottles of liquor brought into the port of Galveston on or about the 8th day of April, 1922, on the steamship Mount Evans, a vessel owned by and operated for the account of the United States Shipping Board Emergency Fleet Corporation. The libel seeks to forfeit under sections 3, 6, and 26 of title 2 of the National Prohibition Act (41 Stat. 305).

The claimant, Capt. A. A. Johnson, master of the vessel, files a claim for the liquor, asserting that he had the legal right to possess liquors aboard his vessel outside of the three-mile limit, and that, by manifesting the said liquor as "ship's stores" at the port of Galveston, he has relieved himself of the operation of the National Prohibition Act while in the harbor. If the possession of the liquors by the captain was unlawful prior to his entering the harbor, then clearly the manifest of

them cannot relieve the illegality; while, if that possession was lawful, I think it equally clear that though goods not capable of importation are not required to be manifested under section 2809, Revised Statutes being Comp. St. § 5506 (see opinion this day filed in United States v. Thirty-Six Cases of Intoxicating Liquor, etc., 281 Fed. 243), the captain could have reported these liquors under Rev. Stat. § 2774 (Comp. St. § 5470), and saved their forfeiture.

This being so, I am not impressed with the argument of the government that the manifesting of the liquors as "ship's stores," even though they were not such, would convert a lawful into an unlawful possession, since the manifest of articles lawfully held on the high seas, but not capable of importation into the United States, has but one purpose, that of disclosure or surrender to the custody of the customs officers of the articles while in port. Such purpose is effectually served by the report or manifest of the articles, no matter under what name or in what way reported.

[1] In what is said it is not meant to at all discuss the effect of a manifest of excessive sea stores, as these are controlled by different statutes, and the libel in this case does not present that question for review. It is merely meant to hold that, from the standpoint of the prohibition laws, a legal possession on the high seas remains a legal possession in the port, if the liquors, during the time the ship is in port, are properly reported and surrendered to the customs officers for sealing and custody.

[2] Since in this case it is admitted that the master manifested these goods as ship's stores, and that they were taken into the custody and control of the customs officers, and it is not claimed that there was any effort to unlawfully land or distribute the goods in the United States, the sole question for decision is:

"Had the master the right to the possession of the goods on shipboard on the high seas, and was this possession a violation of the National Prohibition Act?"

That it was a violation of such act, and that for such violation the liquors have become forfeited to the United States, I think clear. The Eighteenth Amendment provides:

"After one year from the ratification of this article the manufacture. sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

Section 3 of title 2 of the Volstead Act (National Prohibition Act) provides:

"No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes ino effect, manufacture, sell, barter, transfer, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

It is admitted that these liquors were held owned, possessed, and carried by the master on the ship Evans for beverage purposes, and, if the ship was a part of the territory of the United States, clearly his act

was a violation of the law. That question I think, is settled in United States v. Rodgers, 150 U. S. 249, 14 Sup. Ct. 109, 37 L. Ed. 1071, in which the court stated (150 U. S. on page 260, 14 Sup. Ct. 113, 37 L. Ed. 1071), referring to vessels on the high seas:

"All of them, * * * so far as transactions had on board are concerned, are deemed to be within the country of their owners. Constructively they constitute a part of the territory of the nation to which the owners belong."

Again, in the same case (150 U. S. on page 264, 14 Sup. Ct. 115, 37 L. Ed. 1071), quoting from a memorandum to Mr. Webster, while Secretary of State, in a letter to Lord Ashburton, in 1842:

"It is natural to consider the vessels of a nation as parts of its territory, though at sea, as the state retains its jurisdiction over them."

Again (150 U. S. on page 265, 14 Sup. Ct. 115, 37 L. Ed. 1071). quoting from same authority the court said:

"But nevertheless the law of nations, as I have stated it, and the statutes of governments founded on that law, as I have referred to them, show that enlightened nations, in modern times, do clearly hold that the jurisdiction and laws of a nation accompany her ships not only over the high seas, but into ports and harbors, or wheresoever else they may be water-borne, for the general purpose of governing and regulating the rights, duties, and obligations of those on board thereof, and that, to the extent of the exercise of this jurisdiction, they are considered as parts of the territory of the nation herself."

From this it follows that the libel of the government must be sustained, and that the government should have judgment for forfeiture and condemnation.